JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs-appellants, a group of seven individuals,[1]
designated by the trial court as "Bevan Group 9," appeal the trial court's decision granting the motion to dismiss of defendants-appellees, 47 individually appellees, 47 individually named insurance entities[2]
(collectively, the "insurance defendants"). Finding no merit to the appeal, we affirm.
 {¶ 2} Bevan Group 9 includes seven individual plaintiffs who originally filed essentially identical personal injury lawsuits against numerous manufacturers, distributors, and premises owners (collectively, the "industrial defendants") for their involvement in the manufacturing, sale, distribution and/or use of asbestos and/or asbestos containing products.[3] Bevan Group 9 also alleged claims against the insurance claims against the insurance defendants, seeking to hold them liable for each plaintiff's asbestos-related injuries based on their failure to protect plaintiffs from the harmful risks of asbestos. The amended complaint asserted claims against the insurance defendants for: (1) negligent undertaking, (2) spoliation, (3) conspiracy, and (4) concert of action.
 {¶ 3} In response to the complaint, several insurance defendants filed motions to dismiss and motions for judgment on the pleadings, while other insurance defendants joined in the motions filed by their co-defendants. In accordance with its case management order, the trial court treated the motions as a collective motion of all the defendants, including those insurance defendants which had not filed motions, and conducted a hearing on the motions. In finding that Bevan Group 9 failed to state a claim pursuant to Civ.R. 12(B)(6), the trial court dismissed the complaint.[4]
 {¶ 4} Bevan Group 9 appeals,[5] raising two assignments of error.
 {¶ 5} In its first assignment of error, the Bevan Group 9 claims that the trial court erred in granting the insurance defendants' motion to dismiss.
 {¶ 6} When reviewing a judgment granting a Civ.R. 12(B)(6) motion, an appellate court must independently review the complaint to determine whether dismissal was appropriate. Decisions on Civ.R. 12(B)(6) motions are not findings of fact, but, rather are conclusions of law. State ex.rel. Drake v. Athens Cty. Bd. of Elections (1988), 39 Ohio St.3d 40. An appellate court need not defer to the trial court's decision in Civ.R. 12(B)(6) cases. McGlone v. Grimshaw (1993), 86 Ohio App.3d 279, citingAthens Cty. Bd. of Elections, supra.
 {¶ 7} In order to prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recover. A court is confined to the averments set forth in the complaint and cannot consider outside evidentiary materials. Greeley v. Miami Valley Maintenance Contrs. Inc. (1990),49 Ohio St.3d 228; Chinese Merchs. Ass'n v. Chin, 159 Ohio App.3d 292,2004-Ohio-6424. While a court must presume that all factual allegations set forth in the complaint are true and must make all reasonable inferences in favor of the nonmoving party, the same does not apply to unsupported conclusions. Mitchell v. Lawson Milk Co. (1988),40 Ohio St.3d 190, 192-193; Burks v. Peck, Shaffer Williams (1996),109 Ohio App.3d 1, 6. Indeed, the Ohio Supreme Court has repeatedly recognized that unsupported conclusions will recognized that unsupported conclusions will not withstand a motion to dismiss. Id., citing Schulmanv. Cleveland (1972), 30 Ohio St.2d 196, 198. See, also State ex rel.Hickman v. Capots (1989), 45 Ohio St.3d 324.
 Negligent Undertaking {¶ 8} Bevan Group 9 first argues that the trial court erred in finding that the insurance defendants did not owe a duty.
 {¶ 9} It is well-settled that "liability in negligence will not lie in the absence of a special duty owed by the defendant." Hill v. Sonitrol ofSouthwestern Ohio (1988), 36 Ohio St.3d 36, quoting Second Nat'l Bank ofWarren (1984), 9 Ohio St.3d 77, 78. Moreover, negligence liability premised on a failure to act arises only where a "special relationship" exists between the parties. Wallace v. Ohio Dept. of Commerce, Div. ofState Fire Marshall, 96 Ohio St.3d 266, 280, 2002-Ohio-4210. In the absence of a "special relationship," Ohio law does not impose liability on an actor for failing to take affirmative precautions for the aid or protection of another. Hill, supra, at 39. Thus, even when an actor has knowledge that another party needs assistance or protection, the law imposes no duty to act unless a "special relationship" exists. See, e.g., Beacon Ins. Co. v. Patrick (Apr. 3, 1997), Cuyahoga App. No. 70663.
 {¶ 10} In finding that the insurance defendants and the Bevan Group 9 had no "special relationship," the court properly held that the insurance defendants owed no duty to protect the Bevan Group 9 from the hazards of from the hazards of asbestos, despite their alleged knowledge of the risks. While Bevan Group 9 does not challenge the trial court's determination that the insurance defendants owed no duty by virtue of a "special relationship," each plaintiff claims that the insurance defendants voluntarily assumed a duty to ensure the safety of their insureds' premises and to establish reasonable standards for workers' safety. As a result of the insurance defendants' voluntarily assumption of these duties, the Bevan Group 9 claims that tort liability exists by virtue of the Good Samaritan doctrine, set forth in Section 324A of the Restatement (Second) of Torts, which provides:
"One who undertakes, gratuitously or for consideration, to renderservices to another which he should recognize as necessary for theprotection of a third person or his things, is subject to liability to thethird person for physical harm resulting from his failure to exercisereasonable care to protect his undertaking, if
 (a) his failure to exercise reasonable care increases the riskof such harm, or,
 (b) he has undertaken to perform a duty owed by the other to the thirdperson, or
 (c) the harm is suffered because of reliance of the other or the thirdperson upon the undertaking."
Restatement (Second) of Torts § 324A (1965).
 {¶ 11} Bevan Group 9 argues that, contrary to the trial court's conclusion, the complaint pled affirmative acts taken by the insurance defendants which demonstrated that they voluntarily assumed a duty of reasonable care. We disagree. The allegations relied on by Bevan Group 9 demonstrate that the claims are entirely predicated on the insurance predicated on the insurance defendants' failure to act. For example, the complaint states:
"The Insurance Defendants were negligent in their independent duty toinspect machinery, boilers, facilities such as chemical plants,refineries and buildings and warn of the deadly dangers of asbestosexposure. The Insurance Defendants breached these duties by not onlyfailing to adequately educate, investigate and warn of hazardousconditions, but also knowingly and actively contributing to Plaintiffs'exposure to asbestos by their inaction and acquiescence."
(Varner Amended Compl. at ¶ 212).
 {¶ 12} Further, we fail to see how the allegations of the complaint demonstrate that the insurance defendants, either as individual entities or collectively, voluntarily assumed a duty to the Bevan Group 9. As for Bevan Group 9's claim that the insurance defendants voluntarily assumed a duty to the Bevan Group 9 by virtue of the alleged actions they performed for their insureds, i.e., inspections, product design, and training of their own representatives, we disagree. We find no support in the complaint that such actions were taken by the insurance defendants for the benefit of the Bevan Group 9. Indeed, the Bevan Group 9 fails to allege any connection between themselves and the insurance defendants. Further, we find nothing in the complaint that could be construed as demonstrating that the insurance defendants voluntarily assumed a duty to the Bevan Group 9 and the public at large.
 {¶ 13} Moreover, the complaint states no facts supporting the Bevan Group 9's sweeping assertions that the insurance defendants negligently inspected machines, negligently designed products, and negligently trained negligently trained employees. The mere inclusion of a conclusory statement that a defendant was negligent, without any reference to any supporting facts, does not require the court to accept the statements as true. See, Mitchell, supra. Although we are cognizant that "a complaint need not contain every factual allegation that the complainant intends to prove, as such facts may not be available until after discovery."Landskroner v. Landskroner (2002), 154 Ohio App.3d 471, 490. The complaint, however, "must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be on the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Fancherv. Fancher (1982), 8 Ohio App.3d 79, 83. As to the claim of negligent undertaking, we find neither in the complaint.
 {¶ 14} However, even assuming that the insurance defendants had voluntarily assumed a duty to the Bevan Group 9, we find that the complaint fails to satisfy any subsection of the Restatement Section 324A. The Bevan Group 9 acknowledges that the insurance defendants never undertook to perform the duties of their insureds, thereby negating any claim under subsection (b). As for subsection (a) and (c), we find that none of the allegations establish that the Bevan Group 9 relied on the alleged acts of the insurance defendants or that such acts increased their risk of harm.
 {¶ 15} As discussed above, the gravamen of Bevan Group 9's allegations is that the insurance defendants failed to ensure the safety of each plaintiff's workplace by their "inaction and acquiescence," despite their knowledge of the hazards of asbestos. While the complaint devotes numerous paragraphs to the insurance defendants' extensive knowledge of the risks and dangers of asbestos and their failure to disclose, warn, and educate on these risks, Ohio law does not recognize a claim for negligent undertaking based on the increased risk of harm theory when the underlying conduct is a failure to act. See Wissel v. Ohio High SchoolAthletic Ass'n (1992), 78 Ohio App.3d 529, 540; Powers v. Boles
(1996), 110 Ohio App.3d 29, 36. Rather, liability attaches only when the undertaking involves an affirmative act which increased the risk of harm. Powers, supra, at 36 ("negligent undertaking is about sins of commission, not sins of omission"). Although the insurance defendants allegedly did nothing to diminish the risk of asbestos in the workplace, their inaction negates any claim that the plaintiffs faced an increased risk of harm. See Wissel, supra, at 540 ("the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance").
 {¶ 16} Likewise, the complaint fails to satisfy the reliance element of subsection (c) of the Restatement Section 324A. To properly allege reliance, it was incumbent upon the Bevan Group to plead that each plaintiff relied on an undertaking or promise that the insurance defendants the insurance defendants communicated to them. See, e.g.,Powers, supra; Good v. Ohio Edison Co. (6th Cir. 1998), 149 F.3d 413.
 {¶ 17} In the instant case, the complaint contains no allegation that the Bevan Group 9 relied on the alleged undertakings of the insurance defendants. Indeed, the complaint fails to establish any connection between the Bevan Group 9 and the insurance defendants. Rather, in the complaint, Bevan Group 9 asserts that the insurance defendants "encouraged, enticed and solicited Plaintiffs, their employers, premise owners and the government and the public to rely on the Insurance Defendants for protection, safety, and security." (Varner Compl. at ¶ 207). Because the standard requires actual reliance — not mere encouragement, enticement, or solicitation to rely — we find that Bevan Group 9 failed to satisfy the reliance element. Moreover, in light of the Bevan Group 9's concession that they relied on their employers and premises owners to maintain a work environment safe from asbestos, we find that they cannot allege any facts demonstrating reliance. (See Bevan Group 9's Brief at p. 5.)
 {¶ 18} Accordingly, in light of Bevan Group 9's failure to plead any facts demonstrating that the insurance defendants voluntarily assumed a duty, that the insurance defendants increased the Bevan Group 9's risk of harm from asbestos, or that the Bevan Group 9 relied on the alleged actions of the insurance defendants, we find that the trial court properly dismissed the negligent undertaking claim.
 Spoliation of Evidence {¶ 19} Bevan Group 9 argues that the trial court erred in dismissing their claim for spoliation of evidence.
 {¶ 20} A claim for spoliation of evidence requires proof of five elements: (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts. Smith v. HowardJohnson, 67 Ohio St.3d 28, 29, 1993-Ohio-229.
 {¶ 21} Bevan Group 9's spoliation claim is based on the insurance defendants' alleged sponsorship of a fraudulent "state of the art" defense in asbestos litigation involving their insureds. Bevan Group 9 avers that the insurance defendants withheld information during discovery and entered into "coercive protective orders" as well as promoted false testimony, causing plaintiffs "to expend thousands of dollars in research, time, and expert testimony" to disprove the defense.
 {¶ 22} However, construing these averments as true, we find them insufficient to satisfy the third element for a spoliation claim. Here, these claims are predicated on the insurance defendants' alleged concealment and misrepresentation of information in previous litigation.[6] previous litigation.6 The complaint contains no factual allegation that any insurance defendant "destroyed" or altered any documents relevant to the Bevan Group 9's claims as a means to disrupt the present litigation. We find no authority to allow a spoliation claim based on a defendant's conduct in another litigation which did not involve the plaintiff pursuing the claim.
 {¶ 23} Further, we disagree with Bevan Group 9's reliance on Davis v.Wal-Mart Stores, Inc., 93 Ohio St.3d 488, 2001-Ohio-1593, for the proposition that a spoliation claim may be based solely on concealment of evidence through judicial protective orders or false and misleading testimony provided during discovery depositions and at trial, without any factual allegation of a destruction of evidence. In refusing to interpretDavis, supra, as expanding the scope of a spoliation claim, the Fourth Appellate District in Tate v. Adena Regional Med. Ctr.,155 Ohio App.3d 524, 2003-Ohio-7042, ¶¶ 24-30, recently explained:
The issue in Davis was whether a spoliation claim was barred by thedoctrine of res judicata. The spoliation claim itself was not at issueand Justice Pfeifer's observations were mere dicta. n 6
 Additionally, our Second District colleagues recently considered thesame issue and declined to expand spoliation to include giving falsetestimony. See Pratt v. Payne, 153 Ohio App.3d 450, 2003-Ohio-3777. TheCourt in Pratt acknowledged the language used in the majority thelanguage used in the majority opinion of Davis but, after an exhaustivereview of case law that applied spoliation solely in the context ofdestruction of evidence, the court concluded that the Ohio Supreme Courtwould not have overruled such `lengthy historical precedent' withoutbeing more explicit. Id. at ___ 21 and 24.
 n6 Justice Cook noted that the language in the majority opinion seemedto broaden `willful destruction of evidence' to includemisrepresentation, interference or concealment. 93 Ohio St.3d at 495.(Cook, J., dissenting). Nevertheless, Justice Cook also concluded thatthis was dicta and should not be misconstrued as broadening thedefinition of `willful destruction.' Id. at 496."
 {¶ 24} We find this reasoning to be persuasive and likewise conclude that Bevan Group 9's averments are insufficient to state a claim for spoliation.
 Concert of Action and Conspiracy {¶ 25} Bevan Group 9 argues that the trial court erroneously dismissed their claims for concert of action and conspiracy on the basis that they failed to state any viable underlying claim. While Bevan Group 9 acknowledges that neither claim can survive a motion to dismiss without an underlying tort supporting the claim, they argue that the trial court wrongly concluded that the claims were premised on fraud, as opposed to the properly pled negligent undertaking and spoliation claims. However, having already found that Bevan Group 9 has failed to state claims for either negligent undertaking or spoliation, these claims likewise fail. See Gosden v. Louis (1996), 116 Ohio App.3d 195, 220 (defendant's liability for conspiracy depends on participation in "an underlying unlawful act which is act which is actionable in the absence of a conspiracy") and State Auto. Mut. Ins. Co. v. Rainsberg (1993),86 Ohio App.3d 417, 420-421 (an underlying act of tortious conduct is essential to any concert of action claim).
 {¶ 26} Accordingly, we overrule the first assignment of error.
 Due Process {¶ 27} In its second assignment of error, Bevan Group 9 argues that it had no notice or opportunity to be heard on its claims against those defendants who did not file a dispositive motion. It claims that the trial court's treatment of the motions filed as a collective motion on behalf of all insurance defendants violated basic principles of due process. However, the record reveals that the trial court's case management order expressly provided that "[e]ach defendant shall be deemed to have joined in any other defendant's motion where the granting of the motion would benefit it or all defendants generally. Duplicative motions or motions solely adopting the reasoning of the filing defendant's motion shall not be filed." In light of this notice and the hearing the trial court held on the motions, we find that the Bevan Group 9 was not prejudiced by the trial court's collective treatment of the motions.
 {¶ 28} Accordingly, the second assignment of error is overruled. Judgment affirmed.
It is ordered that appellees recover of appellants the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J. and Kilbane, J. Concur
[1] The individual plaintiffs include Dale Bugg, Charles Gilchrist, Billy Gillette, Luanne Parker, Lee Rettig, McKinnley Sanders, and Yvonne Varner.
[2] The 47 insurance defendants include: (1) ACE American Insurance Company, (2) ACE Property and Casualty Company, (3) Aetna Life Insurance and Annuity Company, (4) Aetna Life Insurance Company, (5) Allianz Life Insurance Company of North America, (6) Allianz Life Insurance Company, (7) Allstate Insurance Company, (8) American Insurance Association, Inc., (9) American Motorists Insurance Company, (10) Century Indemnity Company, (11) Chubb Indemnity Company, (12) Cigna Corporation, (13) Citigroup, Inc., (14) Continental Casualty Company, (15) Electric Insurance Company, (16) GE Life and Annuity Assurance Company, (17) General Electric Capital Assurance Company, (18) Hartford Accident and Indemnity Company, (19) Hartford Casualty Insurance Company, (20) Hartford Fire Insurance Company, (21) Hartford Life and Accident Insurance Company, (22) Hartford Life and Annuity Insurance Company, (23) Hartford Life Insurance Company, (24) Hartford Underwriters Insurance Company, (25) Indemnity Insurance Company of North America, (26) ING Life Insurance and Annuity Company, (27) John Hancock Life Insurance Company, (28) Liberty Mutual Insurance Company, (29) Lumbermens Mutual Casualty Company, (30) Marsh USA, Inc., (31) Maryland Casualty Company, (32) Metropolitan Life Insurance Company, (33) Onebeacon America Insurance Company, (34) Onebeacon Insurance Company, (35) The Prudential Insurance Company of America, (36) St. Paul Fire Marine Insurance Company, (37) The Fidelity and Casualty Company of New York, (38) The Hartford Steam Boiler Inspection and Insurance Company, (39) The Hartford Steam Boiler Inspection and Insurance Company of Connecticut, (40) The Travelers Indemnity Company, (41) The Travelers Insurance Company, (42) The Travelers Life and Annuity Company, (43) Travelers Casualty and Surety Company, (44) Travelers Casualty and Surety Company of America, (45) Travelers Property and Surety Company, (46) United States Fidelity and Guaranty Company, and (47) Zurich American Insurance Company.
[3] These complaints were grouped together at the trial court for purposes of judicial economy because the same counsel represented each individual plaintiff and the claims asserted against the defendants were nearly identical.
[4] The "complaint" refers to the second amended complaint filed inVarner v. Ford Motor Co., et al., Case No. CV-501703, on which the trial court relied in its decision. However, the trial court also dismissed all the complaints of the remaining Bevan Group 9 plaintiffs because the claims asserted in the Varner complaint were applicable in each case. On appeal, Bevan Group 9 references the first amended complaint in Rettig v.Ford Motor Co., et al., Case No. CV-508629, but cites to the Lexis Nexis filing identification number of the Varner complaint. Because the complaints contain essentially the same allegations, we will refer to theVarner complaint for purposes of this opinion.
[5] While the trial court's order pertained to only the insurance defendants' claims, thereby leaving the industrial defendants as parties to the underlying action, we find that the trial court's judgment constitutes a final appealable order because the claims against the industrial defendants are independent and the trial court included Civ.R. 54(B) language in its order.
[6] While the complaint contains a single charge that the insurance defendants "made the conscious decision to vigorously defend their [insureds in asbestos] cases by destroying documents," this allegation is totally unsupported. The complaint identifies no documents that were destroyed. Further, the allegation pertains to the insurance defendants' conduct in previous litigation not involving the Bevan Group 9.